John E. PETROSKEY, Appellant,

v.

LOMMEN, NELSON, COLE, AND STAGEBERG, P.A., a Professional Corporation, and Phillip A. Cole, an Individual, Appellees.

No. 94–1670.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1994.

Decided Nov. 14, 1994.

Robert Brenner, Minneapolis, MN, argued, for appellant.

Lynn George Truesdell, Minneapolis, MN, argued, for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In early 1987, John Petroskey (an accountant by training) began working as the office manager at a law firm in Minneapolis, Minnesota. About a year and a half later, that law firm and another law firm merged; Mr. Petroskey continued as the office manager for the law firm created by the merger, which is known as Lommen, Nelson, Cole, and Stageberg.

In spring, 1991, in arranging for its annual retreat for partners and associates, the law firm hired an outside management consultant to conduct some interviews with various law firm employees, to survey all of the law firm partners and associates and several of the law firm's clients on various issues, and to help plan the agenda for the retreat based on the results of those inquiries. The outside management consultant led the activities during the retreat and submitted some written observations after the retreat. Among those comments was a recommendation to hire a law firm administrator "with 'management experience in a professional services firm' to be a key player in marketing, finance, human resource[s], technology, and general management issues."

Approximately three months later, the law firm asked the outside management consultant to conduct additional interviews with various law firm employees and to make specific recommendations for "an assignment of responsibilities for various management functions so [that the partners could] go forward with [their] primary business as lawyers, not administrators." Among the outside management consultant's subsequent written recommendations were that the law firm hire "A TALENTED FIRM ADMINISTRATOR ... with strong managerial and business skills ... someone in the $60–$80,-000 salary range who has managed in a professional services firm environment" to whom the "DAY–TO–DAY MANAGEMENT ISSUES" could be delegated. The outside management consultant recommended, accordingly, that Mr. Petroskey be given "a fair severance package" and assistance in finding a new job. The board of directors of the law firm adopted those recommendations unanimously in October, 1991, and fired Mr. Petroskey effective mid-January, 1992, with a severance package that included three months' additional salary.

Mr. Petroskey sued the law firm in state court about 10 months later; the law firm removed the case to federal district court. Mr. Petroskey originally brought multiple federal and state claims against the law firm, one of the partners of that firm, and the outside management consultant. By the time the law firm and the partner moved for summary judgment in late 1993, however, the only claims remaining were for wrongful discharge in retaliation for reporting others' alleged wrongdoing, against the law firm, and for tortious interference with an employment contract, against the law firm partner. After a one-day hearing, a magistrate judge recommended that the motion for summary judgment be granted. The district court subsequently accepted that recommendation and granted summary judgment to the defendants in early 1994. *See Petrosky v. Lommen, Nelson, Cole and Stageberg,* 847

F.Supp. 1437, 1439 (D.Minn.1994). Mr. Petroskey appeals. We affirm the judgment of the district court.[1]

## I.

■ Mr. Petroskey's wrongful discharge claim is based on state law that prohibits the discharge of an employee for "report[ing] a violation or suspected violation of any federal or state law or rule adopted pursuant to law to [the] employer," see Minn.Stat.Ann. § 181.932(1)(a), or "refus[ing] an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason," see Minn.Stat.Ann. § 181.932(1)(c). In his appellate brief, Mr. Petroskey contends that he was fired for two reasons, both allegedly in violation of the statute. First, he asserts, he was fired because he refused in July, 1991, to "become involved with [a retired partner's] receipt of disability insurance benefits . . . after hearing members of [the law firm's] board of directors express their surprise and concern that [the retired partner] was receiving such benefits while still making court appearances." Mr. Petroskey states that, "based on the concerns expressed by his knowledgeable attorney-employers," he "developed a good faith belief . . . that they were doing something 'they shouldn't be doing'" (quoting from his deposition), namely, insurance fraud. Second, he asserts, he was fired because he refused in August, 1991 (and reported to the president of the law firm), the request of the defendant partner to "issue checks drawn on the firm's trust account without an attorney's signature." Mr. Petroskey states that he "was knowledgeable enough about rules governing client trust accounts that he, in good faith, believed [that the defendant partner's] directive violated the [ethical] rules [for lawyers] governing trust accounts."

We have read all of the briefs and exhibits submitted with respect to the defendants' motion for summary judgment and Mr. Pet-

roskey's response to it. We have also read every other item in the district court file. We see no evidence whatsoever that Mr. Petroskey's firing was in any way related to his suspicions, reports, or refusals to perform tasks associated with the retired partner's disability insurance benefits or the law firm's trust accounts.

To the contrary, all of the evidence is that both law firm employees and outside business associates had been complaining about the difficulty of dealing with Mr. Petroskey for at least two years before he was fired, that both partners and associates in the law firm had been complaining about Mr. Petroskey's job performance for at least two years before he was fired, that the defendant partner and Mr. Petroskey clashed on several occasions with respect to how the day-to-day operations of the law firm should be organized, and that the outside management consultant recommended replacing Mr. Petroskey prior to either of the events to which Mr. Petroskey attributes his firing. In our view, no reasonable person could reach any conclusion other than that the law firm fired Mr. Petroskey for three reasons—first, because of unsatisfactory demeanor and job performance; second, because his experience was inadequate to deal with the range of problems associated with the day-to-day operations of a growing law firm; and, third, because a choice had to be made between him and the defendant partner, who was "a major contributor of business" to the law firm and whose departure would have had "a substantial adverse impact" on the firm.

## II.

■ As for Mr. Petroskey's claim that the defendant partner tortiously interfered with Mr. Petroskey's employment contract with the law firm, it is well settled under Minnesota law that a corporate officer may be liable for such tortious interference only if his actions in causing an employee's firing were "predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm

---

1. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendations of the

Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota. See 28 U.S.C. § 636(b)(1)(B).

the employee." *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn.1991); *see also id.* at 506 ("when he is engaged in a personal vendetta or excursion"). Even where a personality conflict is the basis for the termination, that conflict "does not rise to the level of [the] actual malice [required to sustain liability] unless the reason for the personality conflict would give the employee a claim against the employer for wrongful discharge." *Piekarski v. Home Owners Savings Bank*, 956 F.2d 1484, 1496 (8th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992).

As indicated above, we find no evidence that the defendant partner's clashes with Mr. Petroskey led to a wrongful discharge under the law. Nor do we find any evidence that the defendant partner's criticisms of and disputes with Mr. Petroskey were motivated by animosity toward Mr. Petroskey personally rather than by a belief that those criticisms and disputes were "in furtherance of the [law firm's] business," *Nordling*, 478 N.W.2d at 507; *see also Piekarski*, 956 F.2d at 1495.

## III.

For the reasons stated, we affirm the district court's order granting summary judgment to the defendants.