**Steven G. ROTHMEIER, Appellant,**

v.

**INVESTMENT ADVISERS, INC., et al., Respondents.**

No. C3–96–1089.

Court of Appeals of Minnesota.

Dec. 17, 1996.

Review Denied Feb. 26, 1997.

Timothy R. Thornton, Scott G. Bowman, Briggs and Morgan, Minneapolis, for Appellant.

Michael Berens, Andrea Carruthers, Kelly & Berens, P.A., George F. McGunnigle, Barbara P. Berens, Timothy P. Glynn, Leonard, Street and Deinard, Minneapolis, for Respondents.

Considered and decided by WILLIS, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

WILLIS, Judge.

Steven Rothmeier appeals from summary judgment granted to respondents Investment Advisers, Inc. (IAI); Noel Rahn; Investment Advisers Venture Management, Inc. (IAVMI); and IAI Capital Management Corporation (IAICMC) on his claims that they violated Minn.Stat. § 181.932 (1994) (the whistleblower act) and breached fiduciary duties. In addition, respondents claim that Rothmeier's whistleblower claim is barred by the statute of limitations. We affirm.

## FACTS

In 1989, IAI hired Rothmeier as President of IAI Capital Group. His responsibilities included managing venture capital investment partnerships and IAI International, an investment banking group. IAICMC, a subsidiary of IAI, was a corporate general partner of Great Northern Capital Management, a Delaware general partnership that was created to engage in merchant banking and was run by IAI International employees, including Rothmeier.

Rahn, the Chief Executive Officer of IAI, and Rothmeier were directors of IAVMI, another IAI subsidiary that is the corporate general partner of IAI Venture Capital Group (IAI Venture I), a Minnesota general partnership, and IAI Venture Capital Group II (IAI Venture II), a Delaware limited partnership. The IAI Venture I partnership agreement provides that any general partner who

has his employment with IAI terminated for any reason * * * shall automatically cease to be a general partner of the Partnership and effective upon such termination shall automatically transfer all or a

portion of his * * * interest in the Partnership * * * for automatic and immediate reallocation to the other individuals who are general partners * * *.

The IAI Venture II partnership agreement provides that a general partner can be terminated "upon a determination of the General Partners or the unanimous written approval of all other General Partners." It further provides for converting a terminated general partner's vested participation percentage to a limited partnership interest and for the reallocation of a general partner's non-vested participation percentage on the date of his termination. Rahn and Rothmeier were general partners in both venture capital partnerships.

In his deposition, Rahn stated that by January 1993 he had decided to discharge Rothmeier because IAI International lost money under Rothmeier's guidance and he did not work well with other employees. On March 15, 1993, Rahn met with Rothmeier and discussed the dissolution of IAI International and the elimination of Rothmeier's position, but did not expressly discharge Rothmeier. During the meeting, Rothmeier brought up the issue of whether IAVMI should have been registered with the SEC under the Investment Advisers Act. Over the next two days, Rothmeier asked various IAI employees for information regarding the registration issue. On March 17, 1993, Rahn fired Rothmeier. The IAI Venture I partners amended the partnership agreement to reflect the withdrawal of Rothmeier as a general partner, and the IAI Venture II partners terminated Rothmeier and reallocated his non-vested participation percentage among themselves.

In September 1993, Rothmeier filed a complaint in federal court alleging federal age discrimination and making claims under state law for violation of the whistleblower act and breach of fiduciary duty. In May 1996, the federal district court dismissed the federal claim with prejudice and "decline[d] to exercise supplementary jurisdiction over the state law claims." *Rothmeier v. Investment Advisers, Inc.*, 932 F.Supp. 1156, 1161 (D.Minn. 1996) (citing 28 U.S.C. § 1367(c)), *aff'd*, 85 F.3d 1328 (8th Cir.1996). Rothmeier imme-

diately filed a complaint in state court, alleging (1) violations of Minn.Stat. § 181.932 (the whistleblower act) and (2) breach of fiduciary duties, resulting in the loss of his partnership interests in IAI Venture and IAI Venture II, the reallocation of his partnership interests, and his exclusion from participation in the partnerships. The district court held that Rothmeier's claims failed as a matter of law and granted respondents' motion for summary judgment.

## ISSUES

1. Did the district court err by concluding that Rothmeier failed to state a whistleblower claim under Minn.Stat. § 181.932?

2. Did the district court err by concluding respondents did not breach any fiduciary duties owed to Rothmeier?

## ANALYSIS

On appeal from a district court's grant of summary judgment, this court reviews (1) whether any genuine issues of material fact exist and (2) whether the lower court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, this court "views[s] the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### I. Whistleblower Act.

The whistleblower act prohibits an employer from discharging an employee who

> in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official.

Minn.Stat. § 181.932, subd. 1(a) (1994). To establish a prima facie case of retaliatory discharge, an employee must show:

> (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.

*Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983). The employer then must come forward with a legitimate business reason for the adverse employment

action. *Id.* at 445. Finally, the burden shifts to the employee to show that the employer's proffered business reason is pretextual or to carry the employee's overall burden of persuasion by showing that the adverse employment action was in retaliation for statutorily protected conduct. *Id.* at 445–46.

## A. Statute of limitations.

■ Respondents contend Rothmeier's claim was barred by the two-year statute of limitations for torts under Minn.Stat. § 541.07(1) (1994). We disagree. Federal district courts have supplemental jurisdiction over nonfederal claims "that are so related to [the federal] claims in the action * * * that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A federal court may decline to exercise supplemental jurisdiction over state claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

> The period of limitations for any claim asserted under subsection (a) * * * shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

Subsection (d) preserved Rothmeier's opportunity to file his dismissed whistleblower claim in state court because the tolling provision was triggered when he "asserted" the claim in federal court pursuant to subsection (a). *See id.* The federal court need not exercise supplemental jurisdiction over the state law claim for the statute of limitations to be tolled under 28 U.S.C. § 1367(d). *See Obendorfer v. Gitano Group, Inc.,* 838 F.Supp. 950, 957 & n. 3 (D.N.J.1993); *Winn v. North Am. Philips Corp.,* 826 F.Supp. 1424, 1426 & 1427 n. 3 (S.D.Fla.1993). The district court correctly determined that "the statute of limitations was tolled on Rothmeier's whistleblower claim while the age discrimination claim was pending in federal court."

## B. Prima facie case.

■ Rothmeier failed to establish the first element of a prima facie case of retaliatory discharge because the record contains no evidence that he engaged in statutorily protected conduct. *See Hubbard,* 330 N.W.2d at 444. Whether a plaintiff made a report in "good faith" is a question of fact. *McDonald v. Stonebraker,* 255 N.W.2d 827, 831 (Minn.1977). Nevertheless, this court may determine as a matter of law that certain conduct does not constitute a "report." *See Michaelson v. Minnesota Mining & Mfg. Co.,* 474 N.W.2d 174, 180 (Minn.App.1991) (holding that appellant failed to state a claim of retaliatory discharge where the record showed he merely gave his supervisor feedback and did not report alleged violations to any outside authority), *aff'd,* 479 N.W.2d 58 (Minn.1992).

Rothmeier conceded he learned about the suspected violation in this case on March 15, 1993, from an internal IAI memorandum that stated: (1) Rahn and corporate counsel had been alerted about the issue of whether IAV-MI should be registered with the SEC under the Investment Advisers Act, and (2) the registration issue was being investigated. We recognize that the whistleblower statute does not require an employer to be ignorant of a suspected violation before an employee makes a report. *See* Minn.Stat. § 181.932, subd. 1(a). However, in view of the undisputed evidence that Rothmeier *knew* Rahn already was aware of the SEC registration issue, Rothmeier's mere mention of that issue to Rahn did not constitute a "report." Although approximately 19 months later Rothmeier reported the suspected violation to the SEC, that report occurred after his termination and could not have been a basis for his discharge.

Rothmeier challenges the district court's conclusion that his whistleblower claim failed as a matter of law because his claim did not implicate public policy. *See Vonch v. Carlson Cos.,* 439 N.W.2d 406, 408 (Minn.App. 1989) (holding that an at-will employee can be discharged for any reason or no reason unless "employee is discharged for reasons that contravene a clear mandate of public policy"), *review denied* (July 12, 1989). Rothmeier's claim fails because there was no report within the meaning of the whistleblower act; thus we need not decide whether

the claim involves the violation of a clear mandate of public policy.

## II. Fiduciary Duties.

■ Rothmeier claims that the district court erred in dismissing his claim that respondents breached their fiduciary duty of good faith (1) by the manner they terminated him from IAI Venture I and IAI Venture II and (2) by converting and reallocating his partnership interests among the remaining partners. Under both Minnesota and Delaware law, all partners owe fiduciary obligations to all other partners. *See Appletree Square I Ltd. Partnership v. Investmark, Inc.*, 494 N.W.2d 889, 892 (Minn.App.1993) (holding that partners have a fiduciary relationship and "are held to high standards of integrity in their dealings with each other"), *review denied* (Minn. Mar. 16, 1993); *Boxer v. Husky Oil Co.*, 429 A.2d 995, 997 (Del.Ch. 1981) (holding that a partner owes a duty to all other partners "to exercise the utmost good faith, fairness, and loyalty").

■ As a threshold matter, IAI and IAICMC owed Rothmeier no fiduciary duties with regard to the venture capital partnerships because neither IAI nor IAICMC was a partner in those partnerships. *See Universal Lending Corp. v. Wirth Cos.*, 392 N.W.2d 322, 326 (Minn.App.1986) (holding "[o]nly a party to the partnership agreement can breach it" and be liable for a breach of fiduciary duty relating to partnership obligations). Moreover, the district court recognized that any action premised on alleged bad faith termination from IAI "cannot be maintained against parties with whom no employment relationship existed—*i.e.,* the named defendants other than IAI."

■ Rothmeier contends that respondents breached fiduciary duties owed to him by terminating him from the partnerships in bad faith. However, the partners here acted pursuant to (1) the IAI Venture I partnership agreement, which provided for automatic termination of Rothmeier's partnership interest upon his termination from IAI and (2) the IAI Venture II partnership agreement, which provided for termination of a partner's interest at the sole discretion of the other partners. Neither agreement abrogates the

fiduciary character of the partnerships. *See Appletree,* 494 N.W.2d at 893 (holding that partners may not agree to eliminate the fiduciary character of their relationship). Moreover, under Delaware law, a partner acting under a limited partnership agreement

> shall not be liable to the limited partnership or to any such other partner for the partner's *good faith* reliance on the provisions of such partnership agreement.

Del.Code Ann. tit. 6, § 17–1101(d) (1994) (emphasis added). Rothmeier provides no support for his argument that his investigation of the SEC registration issue was an improper motivating factor in his termination from the partnerships.

Rothmeier relies on *Pedro v. Pedro (Pedro I),* 463 N.W.2d 285 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991), and *Pedro v. Pedro (Pedro II),* 489 N.W.2d 798 (Minn. App.1992), *review denied* (Minn. Oct. 20, 1992). In the *Pedro* cases, one of three brothers, who each owned a one-third interest in a closely held Minnesota corporation, was discharged after he found a discrepancy in the company's financial records. *Pedro I,* 463 N.W.2d at 287. This court held that the plaintiff's brothers breached the duty owed to him as a shareholder in a closely held corporation by interfering with the plaintiff's ability to perform his job, informing other employees that plaintiff had a nervous breakdown, and threatening to fire plaintiff if he pursued investigation of the financial discrepancies. *Pedro II,* 489 N.W.2d at 801–02.

*Pedro II* is distinguishable because (1) that case involved the statutory duties owed to shareholders of a closely held corporation, rather than partnership fiduciary duties, (2) the plaintiff there had a reasonable expectation as a shareholder in a closely held corporation "that his employment was not terminable at will," *Pedro I,* 463 N.W.2d at 289, whereas Rothmeier acknowledged that his employment was terminable at will, and (3) the majority shareholders in *Pedro II* admitted they were acting "in a manner unfairly prejudicial" toward the plaintiff there, 489 N.W.2d at 802, whereas Rothmeier acknowledged that the partners here complied with the terms of the partnership agreements.

At deposition, Rothmeier conceded (1) that respondents breached no fiduciary duty when his partnership interest in IAI Venture I was reallocated pursuant to the partnership agreement and (2) that the IAI Venture II partnership agreement authorizes converting his vested partnership interest into a limited partnership interest and reallocating his non-vested partnership interest to the other general partners. Nevertheless, Rothmeier relies on *Pedro II* for the proposition that respondents converted and reallocated his IAI Venture II partnership interest in bad faith. As discussed above, *Pedro II* does not govern our decision. Moreover, Rothmeier consented to the terms that provided for forfeiture of his interest upon termination and relied on those provisions to increase his own partnership interest when a previous partner left the partnership. Under Delaware law, the partners in IAI Venture II were entitled to rely on the same forfeiture and reallocation provisions upon Rothmeier's termination. *See* Del.Code Ann. tit. 6, § 17–1101(d). The district court properly granted summary judgment on Rothmeier's breach of fiduciary duties claim.

## DECISION

Rothmeier's whistleblower claim fails as a matter of law, because he failed to allege sufficient facts to prove he made a report within the meaning of the whistleblower act. Further, undisputed facts support the district court's conclusion that respondents did not breach any fiduciary duties owed to Rothmeier.

**Affirmed.**