Kenneth **BOELTER** and Curtis Pargman, Plaintiffs,

v.

The **CITY OF COON RAPIDS**, a Municipal corporation, and Timothy Farmer, in his official capacity as Fire Chief of the City of Coon Rapids, Defendants.

No. 99 Civ. 697 DDA/FLN.

United States District Court, D. Minnesota.

Sept. 15, 1999.

---

10. Doc. No. 17.

Mansfield, Tanick & Cohen, P.A., Marshall H. Tanick, Minneapolis, MN, for plaintiffs.

Julie Fleming–Wolfe, St. Paul, MN, for defendant.

## ORDER

ALSOP, Senior District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. In this case, two firefighters from the City of Coon Rapids (the "City") allege that the City's policy regarding military leave conflicts with various state and federal statutes. They bring this action against the City and Timothy Farmer, in his official capacity as the Fire Chief of the City, asking the Court to enjoin enforcement of the policy and to award damages for loss of pay, including overtime. Plaintiffs also seek an Order, together with damages, requiring Defendants to rescind all disciplinary action taken against them for refusing to follow orders implementing the City's policy. For the reasons set forth below, the Court will grant Plaintiffs' motion in part and deny it in part, and grant Defendants' motion in part and deny it in part.

## BACKGROUND

Plaintiffs Kenneth Boelter and Curtis Pargman are firefighters for the City of Coon Rapids. They are also members of the United States Air Force Reserves. As firefighters, Boelter and Pargman are required to work 24–hour shifts, from 8:00 a.m. one morning to 8:00 a.m. the next. Plaintiffs, on average, work seven of these 24–hour shifts every three weeks. This works out to be 168 hours for every 21–day cycle. Under the collective bargaining agreement between the City and the International Association of Firefighters Union Local No.1935, of which both Plaintiffs are members, Plaintiffs are entitled to compensation at an overtime rate of one and one-half times their normal rate for all overtime in excess of 159 hours in a 21–day cycle. Plaintiffs are entitled to the same amount of overtime compensation for all hours worked in excess of 159 hours under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(k), assuming they are actually on duty with the fire department during this time. Thus, under both the collective bargaining agreement and the FLSA, Plaintiffs are entitled to overtime compensation for nine hours of work if they have not missed a shift during a 21–day cycle.

At times, Plaintiffs' responsibilities in the Reserves coincide with their shifts with the fire department. As members of the Reserves, they are required to report to duty for two weeks per year and at least one weekend per month. Both Boelter and Pargman also put in additional time with the Reserves, devoting approximately 65 days in total each year to military service. Their shifts in the Reserves generally run from 8:00 a.m. to 4:30 p.m., though they will last longer on occasion.

Until January, 1999, the City allowed firefighters serving in the military to take their entire 24–hour work shift as military leave. Moreover, the City paid firefight-

ers at their regular rate for the entire 24–hour period for up to 15 days of military leave. The City did not, however, take into account time spent on military leave during these 15 days for purposes of calculating overtime.

Sometime in the fall of 1998, Plaintiffs asked their Fire Chief, Timothy Farmer, to review the City's policy in light of state and federal military leave laws. Plaintiffs requested the Fire Chief to review the statutes because they believed that the hours they took for military leave should count towards the hours worked for purposes of overtime. According to Plaintiffs, they were entitled to up to 15 days of paid military leave under Minn.Stat. § 192.26, and argued that the leave extended for their entire 24–hour shift. Moreover, they contended that all 24 hours spent on military leave for these 15 days must be counted as hours worked for purposes of calculating overtime under the FLSA.

After reviewing the relevant state and federal laws, however, the Fire Chief reached a different conclusion. Under his reading of Minn.Stat. § 192.26, public employees are not entitled to *any* pay, and their hours do not count towards overtime, unless they return to work "immediately" after their military duties end. As support, the Fire Chief relied upon a provision in the statute which provides that the employee must return to his or her position "*immediately* on being relieved from such military or naval service and not later than the expiration of the time herein limited for such leave." Minn.Stat. § 192.26, subd. 1 (emphasis added). The word "immediately," according to the Fire Chief, means that persons such as Boelter and Pargman cannot take their entire 24–hour shift as military leave, but must proceed directly from their military post to the fire department to be entitled to pay for their military leave.

The City, consistent with the Fire Chief's views, therefore instituted a new policy, the subject of which forms the basis for this lawsuit.[1] Under the new policy, firefighters who serve in the military must return to their work shifts at the fire department "immediately" after their shift in the military ends if they want to be paid under Minn.Stat. § 192.26. If the firefighters return "immediately," they are entitled to be paid for the entire 24–hour shift for a period of up to 15 days. In addition, all 24 hours, inclusive of the military leave time, count towards overtime. If the firefighters do not return to work "immediately" on being relieved from military service, they receive military pay only for the time in training or active service. However, firefighters are allowed to use accumulated vacation or holiday pay to make up the balance of the 24–hour shift.

In addition, as part of the new policy, the City requires each employee to submit a Military Time – Pay Request form prior to taking leave if possible, and after military duty with their payroll sheets, in order to receive pay for military leave. Plaintiffs were first made aware of this form in a memorandum dated March 5, 1999. At that time, Pargman, at least, told the Fire Chief that he wanted to discuss the matter with his attorney before filling out the form. The parties dispute whether Pargman consulted his attorney or whether he acted on his own volition but, in any event, Pargman later refused to fill out the form because, he said, it violated the reporting requirements under state and federal law. Pargman was subsequently giv-

---

1. At the time the parties briefed this matter, there was no formal written policy regarding military leave in place. Instead, both parties based their arguments on a series of letters sent from Fire Chief Farmer to Plaintiffs which detailed the City's position. At oral argument, the Court directed the parties to draft a formal policy regarding military leave, as both parties agreed there was no dispute as to what the policy was. The parties were unable to agree to the precise terms of the policy, however, and thus both provided their own versions for the Court. The two versions do not differ substantively, but only in minor language. The Court concludes that Defendant's version more accurately represents the parties' and the Court's understanding of the policy, and therefore the Court will use the version provided by Defendants. It is, after all, the City's policy that is in dispute.

en an oral reprimand for his failure to follow the Fire Chief's order to fill out the form. A letter detailing the oral reprimand is in Pargman's personnel file.[2]

Plaintiffs challenged the City's policy and the disciplinary action in state court, raising several state and federal claims. Plaintiffs named as Defendants the City and Timothy Farmer, in his official capacity as Fire Chief of the City. Defendants removed the action to this Court under 28 U.S.C. § 1441(b) based on federal question jurisdiction, 28 U.S.C. § 1331.[3] Count I alleges that the City's policy violates Minn. Stat. § 192.26. Count II alleges that it violates the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4312. Counts III and IV allege that the policy improperly restricts and impairs Plaintiffs' rights to overtime compensation in violation of the FLSA and the Minnesota Fair Labor Standards Act, Minn.Stat. § 177.25. Finally, Count V alleges that the disciplinary reprimand constitutes a violation of Minnesota's Whistleblower Act, Minn.Stat. § 181.932.

The parties filed cross-motions for summary judgment. Plaintiffs moved for partial summary judgment on Counts I, II, III, and IV. Plaintiffs seek a determination of liability under these Counts, and ask the Court to award equitable relief. Plaintiffs

also moved for summary judgment on their request for equitable relief enjoining and requiring Defendants to rescind all disciplinary action taken against Pargman for his objection to the City's policy, and to remove all documentation concerning any such discipline from his records and files.[4] Defendants moved for summary judgment on all Counts.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Both parties agreed at oral argument that the matter is ripe for summary judgment, at least on Counts I through IV. The Court therefore turns to the parties' arguments.

## I. Minn.Stat. § 192.26

█ In Count I, Plaintiffs contend that the City's policy violates Minn.Stat. § 192.26. This statute provides that, subject to certain conditions, public employees are entitled to take military leave without loss of pay or other employment benefits for a period of up to 15 days. It says:

> Subject to the conditions hereinafter prescribed, any officer or employee of the state or of any political subdivision,

**2.** Both Plaintiffs alleged in Count V of the Complaint that they were disciplined for failing to fill out the form. Defendants later clarified the record to note that only Pargman—and not Boelter—had been reprimanded. Whatever claims Boelter may have alleged in Count V are therefore dismissed pursuant to Defendants' motion for summary judgment, and only Pargman's claim under this Count remains.

**3.** The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). In addition, a federal court has discretion to retain jurisdiction over supplemental state claims even where all the federal claims are dismissed. *See Rheuport v. Ferguson*, 819 F.2d 1459, 1467 n. 13 (8th Cir.1987) ("When a plaintiff pleads a substantial federal claim, the federal courts may retain jurisdiction over pendent state claims even if the

federal claim is dismissed, dropped, or otherwise fails at or before trial. . . ."); *Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A.*, 847 F.Supp. 1437, 1444 n. 7 (D.Minn.1994) (retaining jurisdiction over supplemental state claims after federal claims had been dismissed where the "interests of justice" were better served by deciding the claims), *aff'd*, 40 F.3d 278 (8th Cir.1994).

**4.** Plaintiffs also seek damages, costs, and attorneys' fees in this case but, they say, neither those matters nor the whistleblower claim are a part of their motion. Plaintiffs, however, have not made clear how the Court would rescind the disciplinary action taken against Pargman *except* under the whistleblower claim. Accordingly, the Court considers Plaintiffs' request for this relief at the same time it discusses Defendants' motion for summary judgment on Count V.

municipal corporation, or other public agency of the state ... who shall be a member of the officers' reserve corps, the enlisted reserve corps, the naval reserve, the marine corps reserve, or any other reserve component of the military or naval forces of the United States ... shall be entitled to leave of absence from the. public office or employment without loss of pay, seniority status, efficiency rating, vacation, sick leave, or other benefits for all the time when engaged with such organization or component in training or actual service ... but not exceeding a total of 15 days in any calendar year.

Minn.Stat. § 192.26, subd. 1. According to Plaintiffs, this statute requires governmental employers to allow their employees up to 15 days of paid military leave, and that any military leave extends for the full shift that the person normally works—in this case, 24 hours.

Defendants counter that Minn.Stat. § 192.26 sets up a number of conditions which must be satisfied before a public employee is entitled to be paid while on leave. Among them, and the one at issue here, is the requirement that the employee return to his or her position "immediately" on being relieved from military service. The statute provides:

> Such leave shall not be allowed unless the officer or employee (1) returns to the public position *immediately* on being relieved from such military or naval service and not later than the expiration of the time herein limited for such leave....

*Id.* (emphasis added). Defendants contend that the word "immediately" means that public employees must proceed directly from their military post to their place of employment in order to be paid for the time spent on military leave. This is true even if it means, as in this case, returning to work in the middle of the night and in mid-shift. Failure to comply with this "precondition" prevents an employee from being paid under the statute.

The parties' dispute, thus, centers around the meaning of the state statute. The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16. When the words of a statute are clear and unambiguous, the Court must give effect to their plain meaning. *Homart Development Co. v. County of Hennepin,* 538 N.W.2d 907, 911 (Minn.1995). Moreover, underlying the statutes governing military leave in Minnesota is the "basic principal that a person who serves in the armed forces should not be penalized for that service in civilian life." *Byrne v. Independent Sch. Dist. No. 237,* 305 Minn. 49, 50–51, 232 N.W.2d 432, 434 (1975). To that end, military statutes must be liberally construed to achieve their basic purpose. *Id.*

The problem with Defendants' argument is that it ignores the portion of Minn.Stat. § 192.26 that speaks in terms of "days" that a public employee is entitled to have off for military leave. *See State v. United States Fidelity & Guaranty Co.,* 303 Minn. 131, 133, 226 N.W.2d 322, 323 (1975) (statutes must be construed so that each section and part is given effect). The term "day" when used in a statute is generally defined to include a 24–hour period. *See Homart,* 538 N.W.2d at 911 (noting that "day" means a 24–hour period "unless expressly qualified or limited"); *see also* Minn.Stat. § 645.45(9) (defining "day" to be a 24–hour period from midnight to the next midnight). There is nothing in Minn. Stat. § 192.26 to suggest that the term "day" should be defined differently, and thus a Reservist taking a "day" off for military leave should be entitled to take— "without loss of pay"—the entire 24–hour period.

Moreover, if there were any doubt, the City, in scheduling its firefighters to work in 24–hour shifts, has defined "day" to include a 24–hour period, extending from 8 a.m. one day to 8 a.m. the next. This was the result reached in *Howe v. City of St. Cloud,* 515 N.W.2d 77 (Minn.Ct.App.1994),

a case, like here, that was brought by firefighters against the City of St. Cloud for unpaid military leave under Minn.Stat. § 192.26. In *Howe,* the court held that Minn.Stat. § 192.26 entitles a reservist up to 15 days of paid military leave and that the term "day" should be defined as a 24–hour day. *Id.* at 79–80. In reaching this conclusion, the court noted that the City of St. Cloud had defined a firefighter's "day" as a 24–hour day by scheduling its firefighters to work in 24–hour shifts.

Similarly, here, the City requires its firefighters to work in 24–hour shifts, and firefighters are scheduled to work seven of these 24–hour shifts every three weeks. Like in *Howe,* the City has defined the term "day" as a 24–hour day. And under Minn.Stat. § 192.26, firefighters must be allowed to take up to 15 of these "days" off for military leave without loss of pay. If the firefighters "are paid for less than 24 hours for each 'day' missed due to military leave, they are penalized for their military service," *Howe,* 515 N.W.2d at 80, contrary to the legislature's intent. Thus, under a plain reading of the statute, firefighters serving in the military may take their entire 24–hour work shift as military leave without loss of pay for a period of up to 15 days.

When "day" is defined in this manner, Plaintiffs' position that they need not return to work until their next regularly scheduled shift is entirely consistent with the statute's requirement that the employee return to work "immediately" on being relieved from service. After taking a day off for military leave, a firefighter who returns to work on his or her next shift returns to work as soon as possible after the completion of his or her military duties.

This conclusion is consistent with the intent of the legislature. *See* Minn.Stat. § 645.16 (the object of statutory interpretation is to give effect to the legislature's intent). The drafters of Minnesota's military code intended Minnesota's laws to conform with federal military laws. Minn. Stat. § 190.03 instructs:

> The intent of the military code and all acts of the state affecting the military forces is to conform to all acts and regulations of the United States affecting the same subjects. . . .

Minn.Stat. § 190.03; *see also Byrne,* 305 Minn. at 53, 232 N.W.2d at 435 ("Minn.St. 190.03 provides that the intent of the Military Code (Chapters 190 through 193) is to conform to Federal law relating to the same subjects.").

The City's policy, which it contends fully complies with—indeed, is mandated by—Minn.Stat. § 192.26, creates an inherent conflict with USERRA, the federal military leave law. USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter. . . ." 38 U.S.C. § 4312(a). In the case of someone whose period of service is less than 31 days, to be entitled to these reemployment rights, the employee must report back to work

> (i) not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence; or
>
> (ii) as soon as possible after the expiration of the eight-hour period referred to in clause (i), if reporting within the period referred to in such clause is impossible or unreasonable through no fault of the person.

*Id.* § 4312(e)(1)(A)(i)–(ii). Federal law thus guarantees, at a minimum, time for the safe transportation home plus an eight-hour rest period before an employee on military leave can be required to return to work.

Defendants correctly point out that US-ERRA does not provide for wages or other compensation for time spent on military

leave. *See id.* § 4303(2) ("The term 'benefit', 'benefit of employment', or 'rights and benefits' means any advantage, profit, privilege, gain, status, account, or interest (*other than wages or salary for work performed* ) ...") (emphasis added). But this does not change the fact that there is a conflict between state and federal law under Defendants' policy. Reservists must either give up their right to paid leave under state law to enforce their rights under federal law, or give up their rights under federal law to exercise their right to be paid under state law. This certainly cannot have been the intent of the legislature. *See* Minn.Stat. § 645.17(1) (courts are to presume that legislature does not intend an absurd or unreasonable result).

The Court therefore holds that the City's military leave policy violates Minn. Stat. § 192.26. Plaintiffs' motion for Summary Judgment on Count I will be granted, and Defendants' motion denied.

## II. Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. § 4312

■ In Count II, Plaintiffs contend that the City's military leave policy violates USERRA, 38 U.S.C. § 4312. As previously noted, however, USERRA does not provide for paid military leave. *See* 38 U.S.C. § 4303(2) (the term "benefit" does not include wages). The City's policy therefore does not violate USERRA because firefighters are entitled to take their entire 24–hour work shift as unpaid military leave in full compliance with federal law. The Court therefore will grant Defendants' motion for summary judgment on Count II, and deny Plaintiffs' motion.

## III. Fair Labor Standards Act, 29 U.S.C. § 207

■ In Count III, Plaintiffs maintain that the City's policy improperly impairs or restricts their rights to overtime compensation in violation of the FLSA, 29 U.S.C. § 207. The FLSA generally requires employers to pay employees at overtime rates for any time worked in excess of forty hours in a week. 29 U.S.C. § 207(a). However, because the nature of emergency work does not fit the normal pattern of a forty hour workweek, Congress has enacted § 207(k) which provides public employers who employ police officers and firefighters with a partial overtime pay exemption. *See Christian v. City of Gladstone,* 108 F.3d 929, 931 (8th Cir. 1997) (providing background on § 207(k)), *cert. denied,* 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). Under § 207(k), firefighters must be paid overtime for every hour in excess of 212 hours in a 28–day work period. 29 U.S.C. § 207(k); *see also* 29 C.F.R. § 553.201(a).[5] For any work period that is at least 7 but less than 28 days, the amount of overtime is calculated according to the same ratio. Here, since the work cycle is 21–days, firefighters are entitled to overtime for every hour in excess of 159 hours. *See* 29 C.F.R. § 553.230(c). The firefighters in the City of Coon Rapids work an average of 168 hours if they have not missed a shift, and thus they are entitled to nine hours of overtime under the FLSA. As noted above, the collective bargaining agreement between the City and the Union also provides for overtime compensation for every hour worked in excess of 159 hours.

■ But, as the court determined in *Howe,* a firefighter is entitled to overtime under the FLSA only for hours where the firefighter "performs activities 'which are

---

**5.** Plaintiffs repeatedly assert in their briefs—to their own detriment—that firefighters are entitled to overtime after 216 hours of work in a 28–day cycle. As 29 C.F.R. § 553.201(a) makes clear, however, the 216–hour standard has been replaced, pursuant to the study mentioned in 29 U.S.C. § 207(k)(1), by a 212–hour standard. *See* 29 C.F.R. § 553.201(a); *see also Christian,* 108 F.3d at 931 (noting that § 207(k) permits firefighters to work a total of 212 hours during a work period of 28 days before being entitled to overtime compensation).

required for, and directly concerned with, the prevention, control or extinguishment of fires.'" *Howe*, 515 N.W.2d at 80 (quoting 29 C.F.R. § 553.210(a)(4)). The court in *Howe* therefore concluded that "under the FLSA, a firefighter is not required to be paid overtime for military leave." *Id.* Thus, in this case, the City's policy does not impair or restrict Plaintiffs' rights to overtime in violation of the FLSA because only those hours that a firefighter is "actually on duty are included as hours worked for the purposes of FLSA overtime." *Lanehart v. Horner*, 818 F.2d 1574, 1576 (Fed.Cir.1987); *see Drollinger v. State of Arizona*, 962 F.2d 956, 959 (9th Cir.1992) (firefighters were not entitled to have leave time counted as part of base hours worked for purposes of computing overtime under FLSA); *cf. York v. City of Wichita Falls, Texas*, 763 F.Supp. 876, 885 (N.D.Tex.1990) (FLSA "does not require that an employer pay overtime for vacation, holiday and sick leave time off, and such time need not be counted as 'hours worked' for overtime compensation").

■ That said, firefighters are entitled to have the hours spent on military leave counted towards overtime, but it is under Minn.Stat. § 192.26, not the FLSA. This was the issue squarely—and decisively—addressed in *Howe*. In *Howe*, the court concluded that the City of St. Cloud must pay its firefighters overtime compensation in order to comply with the "without loss of pay" requirement in Minn.Stat. § 192.26. *Howe*, 515 N.W.2d at 81. The court explained:

> To comply with the "without loss of pay" requirement in Minn.Stat. § 192.26, we hold that the overtime that would have been paid under the FLSA if the firefighter had not taken military leave must be paid under the Minnesota Military Leave Act. In the present case, to avoid loss of pay from military duty, up to 15 days per year of the Howes' military leave must be included in their total hours worked for purposes of calculating overtime. *This overtime must be paid not under the FLSA, but under Minn. Stat. § 192.26.*

*Id.* (emphasis added); *see also Lanehart*, 818 F.2d at 1582 (federal firefighters, while on military leave, are entitled to overtime compensation under federal statute authorizing "leave with pay" for military duty). The Court therefore holds that Plaintiffs are entitled to have the time spent on military leave counted towards overtime in order to comply with § 192.26's "without loss of pay" provision.

Plaintiffs do not specifically allege in Count III that they are entitled to overtime compensation under Minn.Stat. § 192.26, instead of the FLSA. A liberal reading of their briefs to this Court, however, can be read as seeking relief, alternatively, under that statute. *See* Pls.' Mem. of Law in Supp. of Mot. for Partial Summ. J., at 17 ("Thus, whether under the Federal Fair Labor Standards Act, the Minnesota Fair Labor Standards Act, *or the Military Leave Act*, paid military leave hours must be taken into consideration in calculating overtime.") (emphasis added). The Court will therefore grant Plaintiffs' motion for summary judgment under Count III to the extent Plaintiffs claim that they are entitled to overtime under Minn.Stat. § 192.26, and deny Defendants' motion.

## IV. Minnesota Fair Labor Standards Act, Minn.Stat. § 177.25

■ In Count IV, Plaintiffs allege that the City's policy impairs or restricts their rights to overtime compensation in violation of the Minnesota Fair Labor Standards Act, Minn.Stat. § 177.25. Minnesota's Fair Labor Standards Act requires an employer to pay an "employee" overtime compensation for any hours worked in excess of 48 hours each week. Minn.Stat. § 177.25. Both parties have failed to recognize that firefighters are not considered "employees" covered by the Act. *See* Minn. Stat. § 177.23, subd. 7(9) (term "employee" means "any individual employed by an employer but *does not include* . . . any individual employed by a political subdivision to provide police or fire protection services or employed by an entity whose principal

purpose is to provide police or fire protection services to a political subdivision") (emphasis added). Defendants' motion for summary judgment on Count IV will be granted, and Plaintiffs' motion denied.

## V. Minnesota Whistleblower Act, Minn.Stat. § 181.932

In Count V, Pargman alleges that Defendants' act of disciplining him for failing to fill out the Military Time—Pay Request form as part of Defendants' policy violates the Minnesota Whistleblower Act, Minn.Stat. §§ 181.931–.935. The Minnesota whistleblower statute prohibits an employer from disciplining an employee because:

(a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

(b) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;

(c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

*Id.* § 181.932, subd. 1(a)–(c).

In determining whether an employee has made out a claim under the whistleblower statute, Minnesota courts follow the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Calvit v. Minneapolis Public Schools*, 122 F.3d 1112, 1118 (8th Cir.1997). Under this test, the employee must establish a prima facie case of retaliation, which requires proof of: " '(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.' " *Id.* (quoting *Rothmeier v. Investment Advisers, Inc.*, 556 N.W.2d 590, 592 (Minn.Ct.

App.1996)). If the employee succeeds in presenting a prima facie case, the burden shifts to the employer to present a legitimate reason for its action. *Id.* The factfinder then decides whether the employer's reasons are pretextual. *Id.* Summary judgment is appropriate if there is no genuine issue of material fact on any element of the prima facie case. *Id.*

Pargman alleges in the Complaint that Defendants' act of disciplining him violated all three provisions of Minn.Stat. § 181.932, subd. 1. The discipline stems from the City's decision, reflected in a March 5, 1999, memorandum, to require persons taking military leave to fill out a "Military Time—Pay Request" form before taking military leave if possible, and after military duty with their payroll sheets, if they are requesting payment for their military leave under Minn.Stat. § 192.26. The purpose of the form, as stated in the March 5 memorandum, is primarily one of record-keeping.

The Fire Chief allegedly hand-delivered a copy of the memorandum and the form to Pargman on March 8, 1999, and told him to submit the form with his payroll sheet that morning. According to Pargman, he asked for an opportunity to consult with his attorney before filling out the form, but was refused. According to Defendants, Pargman did speak to his attorney and his attorney advised him not to fill out the form. In any event, Pargman informed the Fire Chief that he would not fill out the form and he was given an oral reprimand as a result. A letter detailing the oral reprimand reveals that the disciplinary action was taken for failing to follow a direct order of the Fire Chief. The letter is in Pargman's personnel file.

Defendants contend that they are entitled to summary judgment on Pargman's whistleblower claim. They allege that Pargman cannot establish any of the elements of a prima facie case, nor can he establish that Defendants' legitimate reason for disciplining Pargman is a pretext. Pargman maintains that fact questions ex-

ist on the whistleblower claim, but also takes the inconsistent position (in light of his contention that there are fact questions) that he is entitled to summary judgment on his request for an Order requiring Defendants to rescind all disciplinary action taken against him for refusing to follow an order implementing the City's policy. The problem with Pargman's position is that the Court knows of no way to grant the relief Pargman seeks except under the Whistleblower Act, which he also argues is not ripe for decision.[6]

Whether acting on his attorney's advice or of his own volition, Pargman allegedly refused to fill out the Military Time—Pay Request form on the grounds that it violated state and federal law. In his brief to this Court, however, Pargman has only identified one statute—specifically, 38 U.S.C. § 4312(a)(1)—that the form allegedly violates. 38 U.S.C. § 4312(a)(1) says that a reservist need only provide advance verbal notice before taking military leave.[7] It is clear, in the Court's view, that the Military Time—Pay Request form does not violate this provision. The form is simply a method to keep track of the number of hours a person is entitled to be paid under the state statute while on military leave. The form has nothing to do with providing notice before taking leave under federal law. Nor can it be said that the form violates Minn.Stat. § 192.26. That statute says nothing about the use of forms to keep track of time spent on military leave for purposes of determining the amount of pay.

■ This conclusion does not end the inquiry of whether Pargman has made out a claim under the whistleblower statute, contrary to Defendants' suggestions. The relevant question, in establishing the first element of a prima facie case, is whether Pargman engaged in statutorily-protected conduct. *See Calvit*, 122 F.3d at 1118. Minn.Stat. § 181.932, subd. 1(a) speaks to an employee who, "in good faith, reports a violation or suspected violation" of the law. It is irrelevant, for purposes of this subdivision, whether there was an *actual* violation of the law. *Hedglin v. City of Willmar*, 582 N.W.2d 897, 900 (Minn.1998). The "only requirement" is that the report of the violation or suspected violation be "made in good faith." *Id.* (summary judgment was inappropriate where reports made by firefighters implicated state law violations). Good faith, moreover, is normally a question of fact for the jury. *Rothmeier v. Investment Advisers, Inc.*, 556 N.W.2d 590, 593 (Minn.Ct.App.1996),

---

6. Contrary to Defendants' suggestion, the Whistleblower Act specifically authorizes the Court to grant both legal and equitable relief, including the equitable relief sought by Pargman. Minn.Stat. § 181.935(a) provides:

> In addition to any remedies otherwise provided by law, an employee injured by a violation of section 181.932 may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, *and may receive such injunctive and other equitable relief as determined by the court.*

*Id.* (emphasis added). There is also no merit to the suggestion that Pargman is not entitled to the requested relief because he could have grieved the disciplinary action or sought relief from the Minnesota Court of Appeals on writ of certiorari. *See Larson v. New Richland Care Center*, 538 N.W.2d 915, 918–19 (Minn. Ct.App.1995) (municipal employee has the right to bring a whistleblower action in district court without seeking a writ of certiora-

ri), *pet. for rev. granted*, (Minn. Dec. 20, 1995), *pet. for rev. denied*, (Minn. March 4, 1997); *Manteuffel v. City of North St. Paul*, 538 N.W.2d 727, 731 (Minn.Ct.App.1995) (public employees who claim to be injured by violations of the Whistleblower Act may bring a civil action in district court under Minn.Stat. § 181.935(a)).

7. 38 U.S.C. § 4312 provides in relevant part that

> (a) ... any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter ... if—
> (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance *written or verbal* notice of such service to such person's employer.

38 U.S.C. § 4312(a)(1) (emphasis added).

*pet. for rev. denied,* (Minn. Feb. 26, 1997). The evidence before the Court is enough to create a fact question of whether Pargman had a "good faith suspicion" that the form violated state or federal law. *See Cox v. Crown CoCo, Inc.,* 544 N.W.2d 490, 496 (Minn.Ct.App.1996) (plaintiff made a prima facie case under the whistleblower statute where she had a "good faith suspicion" of health code and safety violations in the workplace).

In addition, the Court concludes that a reasonable jury could find that Pargman's decision not to fill out the form is protected conduct under § 181.932, subd. 1(c). Subdivision 1(c) protects the right of employees "to refuse to follow an order to violate a law without fear of reprisal." *Morrow v. Air Methods, Inc.,* 884 F.Supp. 1353, 1359 (D.Minn.1995). Subdivision 1(c) imposes a "somewhat more restrictive standard" than subdivision 1(a)'s good faith test by requiring "an objective, factual basis for believing that the employer's direction would violate a law." *Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A.,* 847 F.Supp. 1437, 1446 (D.Minn. 1994), *aff'd,* 40 F.3d 278 (8th Cir.1994). But again, like under subdivision 1(a), subdivision 1(c) does not require that Pargman's determination that the form violated state or federal law be right. Instead, Pargman must have had "an objective basis in fact" to believe that the form violated the law, and he must have informed Defendants that the order to fill out the form was being refused for that reason. Minn. Stat. § 181.932, subd. 1(c); *cf. Petroskey,* 847 F.Supp. at 1448 (plaintiff must have more than "a conjectural belief that a violation of law had occurred" under subdivision 1(c)). Based on the evidence, the Court concludes that there is a genuine issue of material fact as to whether Pargman had an objective, factual basis to believe that the form violated the law. *See Janklow v. Minnesota Bd. of Examiners for Nursing Home Adm'rs,* 536 N.W.2d 20, 23 (Minn.Ct.App.1995) (summary judgment was inappropriate where employee offered substantial evidence tending to show he refused to perform an action that

he believed would violate state law), aff'd, 552 N.W.2d 711 (Minn.1996).

The Court agrees with Defendants, however, that there is no fact question as to whether Pargman is entitled to the protection of subdivision 1(b). There is simply no credible evidence in the record to support Pargman's assertion that he was "requested by a public body or office to participate in an investigation, hearing, [or] inquiry."

Defendants also maintain that Pargman cannot establish the third element of his prima facie case, namely, that there is a causal connection between the statutorily-protected conduct and the adverse employment action. There is no merit to this argument under the subdivision 1(c) claim. Pargman alleges that he engaged in statutorily-protected conduct under subdivision 1(c) when he refused to follow the Fire Chief's order to fill out the form. He was disciplined precisely because he refused to follow this order, and thus there is causation. Pargman, moreover, has made a prima facie case of causation under the subdivision 1(a) claim. At trial, of course, Pargman will have to convince the trier of fact that his *report* of violations or suspected violations of the law, rather than his refusal to follow an order, caused Defendants to discipline him in order to establish a causal link under this subdivision.

Finally, Defendants contend that Pargman cannot establish pretext. Defendants' argument, as the Court understands it, is even assuming Pargman established a prima facie case, Defendants have met their burden of presenting a legitimate reason for reprimanding Pargman, and Pargman cannot establish that this reason is a pretext for unlawful conduct. The reason Defendants offer for why Pargman was disciplined is "insubordination." This is simply another name for refusing to follow the Fire Chief's order to fill out the Military Time—Pay Request form, an issue this Court has already determined raises a fact

question as to whether Pargman engaged in statutorily-protected conduct.

Accordingly, Defendants' motion for summary judgment on Count V as against Plaintiff Pargman will be denied, but will be granted as against Plaintiff Boelter. Because there are fact questions on his whistleblower claim, Pargman's motion for summary judgment for an Order requiring Defendants to rescind all disciplinary action taken against him for refusing to follow an order implementing the City's policy will be denied.

\*     \*     \*     \*     \*     \*

Upon its review of the files, motions and proceedings herein, it is hereby ORDERED that:

1. Plaintiffs' motion for partial summary judgment on liability on Counts I and III is GRANTED;

2. Plaintiffs' motion for partial summary judgment on Counts II and IV is DENIED;

3. Plaintiffs' motion for partial summary judgment on their request for equitable relief enjoining and requiring Defendants to rescind all disciplinary action taken against Pargman for his objection to the City's policy, and to remove all documentation concerning any such discipline from his records and files is DENIED;

4. Defendants' motion for summary judgment on Counts II and IV is GRANTED, and Counts II and IV are DISMISSED;

5. Defendants' motion for summary judgment on Counts I and III is DENIED;

6. Defendants' motion for summary judgment on Count V as against Plaintiff Curtis Pargman is DENIED, but GRANTED as against Plaintiff Kenneth Boelter, and the claim brought by Boelter in Count V is DISMISSED.